2026 IL App (4th) 250262

NO. 4-25-0262

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
June 30, 2026
Carla Bender
4th District Appellate
Court, IL

| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | Logan County |
| DEANDRE L. ROGERS, | ) | No. 19CF130 |
| Defendant-Appellant. | ) | |
| | ) | |
| | ) | Honorable |
| | ) | Jonathan C. Wright, |
| | ) | Judge Presiding. |

JUSTICE DeARMOND delivered the judgment of the court, with opinion.
Presiding Justice Steigmann and Justice Lannerd concurred in the judgment and opinion.

**OPINION**

¶ 1        Defendant, Deandre L. Rogers, pleaded guilty to one count of drug-induced homicide (720 ILCS 5/9-3.3(a) (West 2018)), and in exchange, the State agreed to (1) dismiss a second count of drug-induced homicide and several other cases and (2) recommend a sentencing cap of 23 years in prison. Following a sentencing hearing, defendant was sentenced to 21 years' imprisonment, followed by 18 months of mandatory supervised release.

¶ 2        Thereafter, defendant filed a petition under the Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1 *et seq.* (West 2024)). He argued his counsel provided ineffective assistance in relation to his guilty plea. After the circuit court dismissed the petition as patently without merit, this court reversed and remanded for second-stage proceedings, having concluded defendant's

petition stated "an arguable legal and factual basis for ineffective assistance of counsel due to counsel's failure to file a motion to withdraw his guilty plea." *People v. Rogers*, 2023 IL App (4th) 220937-U, ¶¶ 14, 16.

¶ 3        On remand, defendant's postconviction counsel eventually filed a motion to withdraw, asserting defendant's claims were meritless, and the circuit court granted the motion. Thereafter, the court dismissed defendant's postconviction petition on the State's motion. Defendant appeals. We affirm.

¶ 4                                I. BACKGROUND

¶ 5                        A. The Charges and Guilty Plea

¶ 6        Defendant was indicted on two counts of drug-induced homicide in July 2019 (720 ILCS 5/9-3.3(a) (West 2018)). Subsequently, defendant agreed to plead guilty to one count of drug-induced homicide, in return for which the State would dismiss the other homicide charge and additional outstanding charges in Logan County case Nos. (1) 18-CF-163, (2) 17-TR-3383, (3) 17-TR-3306, (4) 18-TR-850, (5) 18-TR-1707, (6) 19-TR-1488, and (7) 19-TR-1902. The State also agreed to cap its sentencing recommendation at 23 years' imprisonment.

¶ 7        In July 2021, at defendant's plea hearing, defendant informed the circuit court he reviewed the document outlining the plea agreement, understood its contents, and discussed the plea agreement with his counsel, who answered all his questions. The court admonished defendant the State alleged he committed drug-induced homicide "by knowingly delivering heroin, a controlled substance, to John Beck and John Beck thereafter ingested a portion of that heroin into his body and said ingestion caused the death of John Beck." Defendant was informed that any sentence imposed would be mandatorily consecutive to any sentences that might be imposed in any cases pending in Logan County not covered by the plea.

¶ 8       The circuit court initially informed defendant he faced a prison sentence between 6 and 30 years, followed by 3 years of mandatory supervised release. The court then proceeded through a complete recitation of Rule 402 admonishments (Ill. S. Ct. R. 402 (eff. July 1, 2012), which defendant acknowledged he understood. Defendant raises no complaint regarding his admonishments. The court explained it was not bound by the State's agreement to cap its recommendation and was free to sentence him to any term of years within the minimum and maximum range of sentences. Defendant acknowledged he understood. When asked, defendant denied anyone had threatened him or forced him to plead guilty and also agreed there had been no promises made to him, other than what was contained in this partially negotiated plea. Defendant then entered a plea of guilty to "Count 1, drug induced homicide, a Class X felony."

¶ 9       However, after the State noted, and defense counsel acknowledged, defendant was eligible for an extended term sentence based on a prior Class X felony, the circuit court readmonished defendant as to the possible sentencing range for an extended term Class X felony. After doing so, defendant again acknowledged he understood the range of sentences possible. The court then expressly inquired whether, knowing this, "does that change your position on pleading guilty pursuant to this partially negotiated plea," to which defendant replied, "No, sir." The court directed the same inquiry to defendant's counsel, who also indicated it did not change counsel's position on the plea either.

¶ 10      The State's factual basis was as follows:

          "Witnesses would testify that on May 18, 2019, this defendant, who would be identified in open court, conducted a drug transaction with John Beck. That this defendant gave John Beck heroin in exchange for $100; that thereafter John Beck used a portion of that heroin. The next morning, on May 19, 2019, John Beck was

discovered deceased. That law enforcement responded to the scene, began investigation. And John Beck's body was taken to the coroner's office for autopsy. And thereafter an autopsy was conducted and it was discovered that John Beck died as a result of ingesting the heroin."

¶ 11 Defendant's counsel agreed the State could produce witnesses to testify substantially as indicated by the State's proffer. The circuit court found defendant had entered a knowing and voluntary plea, found that there was a factual basis for the plea, and entered a judgment of conviction. During the discussion on a date for sentencing, in defendant's presence, defendant's counsel asked the court to clarify "whether or not the Court will accept the agreement between the State and the defendant of a cap of 23 years." The court reminded counsel of the court's admonishments to defendant, "where [it] indicated that the Court is not bound by the State's agreement to cap the recommendation and can sentence within the minimum and maximum range of penalties."

¶ 12 A presentence investigation report (PSI) was prepared that, in addition to outlining the circumstances of the offense, detailed defendant's lengthy criminal history. The PSI indicated defendant was first arrested in Cook County as an eight-year-old minor for unlawful possession of a controlled substance. Thereafter, defendant amassed a substantial number of offenses as a juvenile, including criminal damage to property, assault, residential burglary, armed robbery, fleeing and eluding police, and theft. The PSI noted defendant violated juvenile probation several times and was committed to the Illinois Department of Juvenile Justice, where he "committed a plethora of violations while he was incarcerated." The PSI indicated that, upon aging out, defendant was transferred to the adult division of the Illinois Department of Corrections. As an adult, defendant obtained additional convictions, ranging from multiple traffic offenses to such

- 4 -

felonies as armed robbery and residential burglary, for which he returned to the Illinois Department of Corrections for six years and seven years, respectively.

¶ 13         At defendant's sentencing hearing the State asked for a sentence of 23 years. Defendant's counsel argued for a sentence "in the range of 12 years." The circuit court sentenced defendant to 21 years in prison.

¶ 14                    B. Defendant's Postconviction Petition

¶ 15         In May 2022, defendant filed a *pro se* postconviction petition pursuant to the Act. Therein, he asserted he was denied his constitutional rights to "effective assistance of counsel and Due Process of Law" based on his plea counsel's ineffectiveness. Specifically, defendant asserted his plea counsel incorrectly informed him he "could" receive a six-year sentence if he pleaded guilty and instructed him he "had to answer 'yes' to the questions" posed to him by the circuit court or "he would not be able to get the 6 year plea deal." Defendant claimed, although he told counsel he did not want to plead guilty to drug-induced homicide because he was not guilty, counsel "used scare tactics" to coerce him to do so. Defendant asserted counsel told him "he was a known drug dealer from Chicago who sold a white man a bag of heroin that he overdosed on" and "[w]hether he sold him the drugs or not, if he [went] to trial, no judge or jury would acquit him and he was sure to spend the rest of his life in prison." According to defendant, counsel never told him "that if he went to trial he could also receive the minimum of 6 years." Instead, counsel advised him "the only way he was going to receive a 6-year prison sentence was if [he] plead[ed] guilty to the charge of drug induced homicide and answered yes to the questions the judge asked him regarding his plea of guilt." Defendant contended that, if counsel had not advised him he would receive a "life time in prison" by pursuing a trial and if he "knew he was not going to receive a 6 year sentence," he would not have pleaded guilty.

¶ 16　　　　　Defendant also argued counsel "did absolutely nothing" to ensure he understood "the law in relation to the facts." Specifically, defendant noted that, although the case "hinged on the testimony of Kendra Plue," who would testify defendant sold Beck the heroin resulting in his death, counsel did not "make certain that petitioner knew he had a constitutional right to confront" her. Nor did counsel "make certain that [defendant] knew he had a right to cross[-]examine the toxicologist, Robert Thomas," whose toxicology report showed Beck's death was due to the combined effects of multiple substances. Attached to the petition as exhibit No. 1 was a portion extracted from defendant's PSI stating, "[T]he cause of John Beck's death was attributed to the combined toxic effects of heroin, fentanyl, diphenhydramine, and methamphetamine." Defendant further claimed counsel did not inform him he had the right to pursue a trial and to testify. Defendant contended he would not have pleaded guilty if counsel had properly informed him of his rights.

¶ 17　　　　　Contained within defendant's affidavit attached to his petition were additional claims: (1) that upon learning his sentence, he "told his lawyer he did not agree to a 21-year sentence, *** that he wanted to withdraw the plea," and his trial counsel failed to timely file such a motion on his behalf and (2) an assertion of actual innocence, in that "[he] did not sell John Beck any heroin. [He] did not give John Beck any heroin." The record shows no motion to withdraw his plea was filed.

¶ 18　　　　　Based upon the foregoing, defendant contended the circuit court "should allow [him] to withdraw the plea entered, and allow him to stand trial."

¶ 19　　　　　In August 2022, the circuit court dismissed defendant's postconviction petition as patently without merit. However, this court reversed and remanded the matter for second-stage proceedings based our finding defendant's petition stated "an arguable legal and factual basis for

- 6 -

ineffective assistance of counsel due to counsel's failure to file a motion to withdraw his guilty plea, and the circuit court erred when it summarily dismissed defendant's petition." *Rogers*, 2023 IL App (4th) 220937-U, ¶¶ 14, 16.

¶ 20                                     C. Proceedings on Remand

¶ 21            On remand, the circuit court appointed the public defender to represent defendant in the postconviction proceedings, and at the status hearing on August 16, 2023, counsel said he had spoken with defendant about the issues he raised and requested additional time to amend defendant's postconviction petition, which the court allowed. Counsel returned to court in November 2023, seeking additional time, which was allowed.

¶ 22            In January 2024, defendant's postconviction counsel filed a motion to withdraw as counsel. The motion was continued several times to secure defendant's presence for the hearing. In his motion, counsel argued that, upon his review of the record, he found no meritorious issues that could be presented to the circuit court. Counsel explained defendant's claims were meritless. To the extent defendant argued plea counsel used "scare tactics" to force him to plead guilty, the record showed defendant, in response to the court's questioning, acknowledged no one forced him to enter a guilty plea. Counsel also argued that, to the extent plea counsel informed defendant he would receive a six-year sentence by pleading guilty, the court informed defendant of the minimum and maximum sentences he faced, repeating them after learning of the prior Class X conviction, and defendant acknowledged he understood the sentencing range. Further, although defendant claimed plea counsel failed to inform him that he could pursue a trial and cross-examine witnesses, the record established the court admonished defendant of these rights, and defendant acknowledged he understood them. Finally, as to defendant's claim his plea counsel was ineffective for failing to file a motion to withdraw his guilty plea, postconviction counsel

acknowledged "[plea] counsel failed to do so" and that "defendant sufficiently alleged *** [plea] counsel's performance fell below an objective standard of reasonableness" for the purpose of an ineffective-assistance claim. However, counsel argued defendant could not show he suffered prejudice because none of the bases he asserted for the motion would have warranted withdrawal of his plea. Specifically, the record showed defendant admitted to the factual basis offered by the State, and the court sufficiently admonished defendant about his rights and the possible sentence he faced before he entered his guilty plea. Counsel asserted that, given his determination defendant's claims were meritless, he was permitted to withdraw pursuant to *People v. Greer*, 212 Ill. 2d 192 (2004), and *People v. Kuehner*, 2015 IL 117695.

¶ 23    Defendant's postconviction counsel also filed a certificate pursuant to Illinois Supreme Court Rule 651(c) (eff. July 1, 2017). Therein, counsel stated he consulted with defendant to ascertain his claims and examined the record, but he made no amendments to defendant's *pro se* postconviction petition because his claims were meritless.

¶ 24    In April 2024, defendant filed a response to his postconviction counsel's motion to withdraw. Defendant argued the circuit court lacked the authority to permit postconviction counsel to withdraw, citing *People v. McKenzie*, 323 Ill. App. 3d 592 (2001). Defendant also claimed counsel failed to comply with Rule 651(c), arguing he failed to sufficiently investigate his claims of ineffective assistance of counsel. Defendant argued a thorough investigation of the record would have revealed plea counsel's failure to investigate evidence relating to the toxicology report showing Beck "died from the combined toxic effects [of] heroin, fentanyl, diphenhydramine, and methamphetamine." Defendant also maintained witness statements were not adequately considered as possibly exculpatory, contending perhaps other witnesses could have been found or an expert toxicology witness obtained to explain the presence of other drugs found in Beck's

system or to create the inference others had given Beck the drugs that killed him. Defendant placed a great deal of emphasis on exhibit No. 1, the excerpt from his PSI, which he contends implies Beck had taken other drugs not provided by defendant, which may have caused his death, and he contended plea counsel was defective for not investigating this further. Defendant asserted that, because postconviction counsel failed to investigate his "claims of ineffective assistance of [plea] counsel" in violation of Rule 651(c), the motion to withdraw "should be denied as to the def.s [*sic*] claim of ineffective assistance not having any merit."

¶ 25 On April 30, 2024, the circuit court heard the motion to withdraw. Postconviction counsel and defendant indicated they intended to stand on their respective filings, and when the court asked the State whether it took any position on the motion to withdraw, the State declined, stating,

> "No position to the underlying matter. Just a comment on some of the case law [defendant] provided. He cited [*McKenzie*] as authority for why [postconviction counsel] should not be allowed to withdraw. I read that case. It's a Third District case, 2001.
>
> However, subsequent to that case, the Fourth District declined to follow that ruling in [*People v. Greer*, 341 Ill. App. 3d 906 (2003), *aff'd*, 212 Ill. 2d 192 (2004)]. And so I do believe that [in] the Fourth District, a Motion to Withdraw is allowed by [postconviction counsel]. That's my only comment on this matter."

¶ 26 Thereafter, the circuit court granted postconviction counsel's motion to withdraw. The court noted, after reviewing the Rule 651(c) certificate, this court's order following defendant's initial appeal, and relevant authorities, that it found postconviction counsel's motion to withdraw properly addressed each claim raised in defendant's postconviction petition and

explained why the claims were meritless. The court found that counsel ascertained no new claims after consulting with defendant and noted defendant raised no new issues.

¶ 27　　　　On June 3, 2024, the State filed a motion to dismiss defendant's postconviction petition, arguing defendant's claims of ineffective assistance of counsel failed because the record refuted his claims counsel forced him to plead guilty and the circuit court properly admonished defendant of his trial rights and the sentencing range he faced by pleading guilty. Additionally, the State argued defendant was not prejudiced by counsel's failure to file a motion to withdraw because defendant could not establish such a motion would have had merit. The State highlighted that, beyond defendant's failure to present a viable claim of ineffective assistance of counsel, defendant could not raise a claim of actual innocence because he presented no new, material, noncumulative evidence to clearly and convincingly demonstrate a trial would probably result in acquittal.

¶ 28　　　　On August 21, 2024, the circuit court held a hearing on the State's motion to dismiss, at which the State reiterated the arguments raised in its written motion. Defendant raised no additional argument. The court granted the State's motion to dismiss, finding the record rebutted defendant's claims that counsel forced him to plead guilty, failed to inform him of his trial rights, and told him he would receive a six-year sentence. The court further found defendant's claim he did not sell heroin to Beck did not amount to new evidence sufficient to support a claim of actual innocence, as that information would have been known to defendant at the time of his plea.

¶ 29　　　　This appeal followed.

¶ 30　　　　　　　　　　　　II. ANALYSIS

¶ 31　　　　On appeal, defendant argues (1) the State improperly participated at the hearing on

defendant's postconviction counsel's motion to withdraw, (2) his postconviction counsel was improperly allowed to withdraw, and (3) the circuit court erred in dismissing his postconviction petition.

¶ 32        The Act "provides a mechanism for criminal defendants to challenge their convictions or sentences based on a substantial violation of their rights under the federal or state constitutions." *People v. Morris*, 236 Ill. 2d 345, 354 (2010). Postconviction proceedings are "not a continuation of, or an appeal from, the original case" but a "collateral attack upon the prior conviction" that provides only "limited review of constitutional claims not presented at trial." *People v. Harris*, 224 Ill. 2d 115, 124 (2007). "A postconviction petitioner is entitled only to the level of assistance granted by the Act, which this court has determined to be a reasonable level of assistance [citation], which is less than that afforded by the federal and state constitutions at trial ***." (Internal quotation marks omitted.) *People v. Frey*, 2024 IL 128644, ¶ 23.

¶ 33        The Act establishes a three-stage process for adjudicating a postconviction petition. *People v. English*, 2013 IL 112890, ¶ 23. At the first stage, the circuit court must determine whether the *pro se* petition is "frivolous or is patently without merit." 725 ILCS 5/122-2.1(a)(2) (West 2024). During the second stage, the stage at which defendant's petition was dismissed, "the court may appoint counsel for an indigent defendant, who may amend the petition as necessary, and the State may file a motion to dismiss or an answer to the petition." *People v. Cotto*, 2016 IL 119006, ¶ 27. A petition may be dismissed at the second stage "only when the allegations in the petition, liberally construed in light of the trial record, fail to make a substantial showing of a constitutional violation." *People v. Hall*, 217 Ill. 2d 324, 334 (2005). At the second stage, all factual allegations *not rebutted by the record* are accepted as true. *Id.* We review the dismissal of a postconviction petition *de novo*. *People v. Gharrett*, 2022 IL App (4th) 210349, ¶ 30.

¶ 34     A. The State's Participation at the Hearing on the Motion to Withdraw

¶ 35     Defendant first argues the circuit court violated his right to due process by permitting the State to participate at the hearing on his postconviction counsel's motion to withdraw. Specifically, defendant argues, without citation of authority, because second-stage postconviction proceedings are "non-adversarial" until the State files a responsive pleading, that the court bore sole responsibility for evaluating the motion to withdraw and it was improper for the State to provide input at the hearing on the motion. He asserts the court allowed the State to participate at the hearing without first providing him notice and a meaningful opportunity to respond to the State's arguments. The State responds that nothing prohibited its participation at the hearing on counsel's motion to withdraw and, in any event, nothing in the State's comments was adversarial. The State simply pointed out there is a split between districts and later Fourth District case law permits postconviction counsel to seek a withdrawal—an indisputable statement of the law, regardless of how the court decided the motion.

¶ 36     Defendant relies on *Greer*, *Kuehner*, and both decisions in *People v. Frey*, 2017 IL 120150, and 2024 IL 128644, as support for his position the State is not permitted to participate in the evaluation of a motion by postconviction counsel to withdraw at second-stage postconviction proceedings. Unfortunately for defendant, none of those cases stand for the proposition for which they are cited. In *Greer*, our supreme court said, where the record demonstrates a defendant's postconviction allegations are frivolous and patently without merit, the Act does not prevent the withdrawal of the defendant's counsel. *Greer*, 212 Ill. 2d at 211-12. *Greer* has since been cited as authority to support permitting the withdrawal of postconviction counsel. See *People v. Urzua*, 2023 IL 127789, ¶¶ 41-42. Coincidentally, the Illinois Supreme Court in *Urzua* approved the procedure followed by the circuit court here—allowing counsel to withdraw, requiring the State

to file a responsive pleading, and setting the defendant's petition for a second-stage hearing on the merits. *Id.* ¶ 42. In *Kuehner*, the supreme court clarified that, when postconviction counsel files a motion to withdraw during second-stage proceedings, counsel must provide some explanation as to why all the claims raised in the defendant's *pro se* postconviction petition are frivolous or patently without merit. *Kuehner*, 2015 IL 117695, ¶¶ 21, 27. In *Frey*, the supreme court further clarified counsel's obligation to explain why each claim in the defendant's postconviction petition is frivolous or without merit when seeking to withdraw. The supreme court said counsel's obligation applies whether a petition advanced to the second stage because the circuit court failed to take action on the petition within 90 days (see 725 ILCS 5/122-2.1(b) (West 2024)) or because the circuit court found the petition had potential merit. *Frey*, 2024 IL 128644, ¶ 27.

¶ 37 In relying on these cases, defendant confuses the procedure surrounding a motion to withdraw by counsel at the second stage of a postconviction petition and a *Krankel* hearing. See *People v. Krankel*, 102 Ill. 2d 181 (1984). More importantly, he does so by arguing a negative inference—because none of the cases cited indicated the State had any involvement in the assessments of the motions to withdraw as counsel, that must mean the State cannot be involved. Defendant claims that this absence of the State's involvement in those cases suggests second-stage postconviction proceedings must be construed as nonadversarial until the State files a response to the defendant's postconviction petition, such that the State's participation until such a filing "is neither contemplated nor appropriate." From this, defendant concludes, because postconviction counsel's motion to withdraw was filed while the proceedings were still "non-adversarial," the State was not permitted to provide its input as to the motion.

¶ 38 Defendant's reliance on the foregoing cases is misplaced. None of them state second-stage postconviction proceedings are nonadversarial until the State files a responsive

pleading. Nor do they say the State is prohibited from participating at a hearing on a motion to withdraw after a postconviction petition has been advanced to the second stage. Indeed, the cases make no pronouncement whatsoever about the propriety of the State's participation at a hearing on such a motion because there was no such issue in any of them. See *Greer*, 212 Ill. 2d at 211-12; *Kuehner*, 2015 IL 117695, ¶¶ 24, 27; *Frey*, 2024 IL 128644, ¶ 35 (discussing postconviction counsel's responsibilities pertaining to a motion to withdraw); *cf. People v. Jolly*, 2014 IL 117142, ¶ 38 (explicitly concluding a preliminary hearing pursuant to *Krankel* "should operate as a neutral and nonadversarial proceeding," such that the State should not be permitted to take an adversarial role against a *pro se* defendant at that stage).

¶ 39        Accordingly, we reject defendant's invitation to interpret *Greer*, *Kuehner*, and *Frey* as establishing an affirmative prohibition against the State's involvement at a hearing on postconviction counsel's motion to withdraw.

¶ 40        In any event, here, the State did not address the merits of counsel's motion, and in fact, the State expressly noted it took "[n]o position" on the matter. Instead, the substance of the State's input was merely to clarify case law surrounding a motion by postconviction counsel to withdraw. That very point was raised by postconviction counsel in his motion to withdraw and supported with citations of authority establishing that a motion to withdraw is permitted where counsel determines a defendant's postconviction claims are frivolous or meritless. See *Kuehner*, 2015 IL 117695, ¶ 21; *Greer*, 212 Ill. 2d at 209, 211-12. Defendant, in his response to the motion to withdraw, argued that a circuit court has no authority to allow counsel to withdraw from a meritless postconviction petition. *Kuehner* and *Greer* tell us otherwise. Thus, defendant was not confronted with any argument that was not already raised in his postconviction counsel's motion and addressed in his response to that motion. We therefore reject defendant's claim he was

deprived of notice and an opportunity to respond.

¶ 41    Accordingly, we conclude defendant was not deprived of his right to due process as a result of the State's minimal participation at the hearing on postconviction counsel's motion to withdraw.

¶ 42                    B. Counsel's Compliance With Rule 651(c)

¶ 43    Defendant argues the circuit court erred in allowing his postconviction counsel to withdraw because counsel neither meaningfully consulted with him about his alleged constitutional violations nor adequately reviewed the record, as required by Rule 651(c). The State responds counsel complied with Rule 651(c). Defendant also argues the court erred in granting counsel's motion to withdraw because counsel failed to explain why every claim in his postconviction petition was frivolous or patently without merit. However, because our analysis for this argument and defendant's argument concerning the dismissal of his postconviction petition are substantially related, we address them in a separate section below.

¶ 44    In second-stage postconviction proceedings, there is no constitutional right to the assistance of counsel. *Frey*, 2024 IL 128644, ¶ 23. As we noted above, the Act provides a statutory right to a "reasonable level" of assistance, which is less than that afforded by the federal and state constitutions at trial. (Internal quotation marks omitted.) *Id.*; see 725 ILCS 5/122-4 (West 2024).

¶ 45    To ensure a postconviction petitioner receives such reasonable assistance, Rule 651(c) imposes specific duties on postconviction counsel. *People v. Suarez*, 224 Ill. 2d 37, 42 (2007). The rule provides, *inter alia*, the following:

> "The record filed in that court shall contain a showing, which may be made by the certificate of petitioner's attorney, that the attorney has consulted with petitioner by phone, mail, electronic means or in person to ascertain his or her

- 15 -

contentions of deprivation of constitutional rights, has examined the record of the proceedings at the trial, and has made any amendments to the petitions filed *pro se* that are necessary for an adequate presentation of petitioner's contentions." Ill. S. Ct. R. 651(c) (eff. July 1, 2017).

Postconviction counsel is required to investigate and properly present only the claims raised by the defendant. *Frey*, 2024 IL 128644, ¶ 24. The filing of a certificate pursuant to Rule 651(c) creates a rebuttable presumption that the defendant received reasonable assistance of counsel during the postconviction proceedings. *Id.* "The defendant bears the burden of overcoming that presumption by showing that postconviction counsel did not substantially comply with the strictures of the rule." *People v. Addison*, 2023 IL 127119, ¶ 21.

¶ 46            If postconviction counsel determines none of the issues raised in the petition are meritorious, he or she may seek to withdraw as counsel. *People v. Pace*, 386 Ill. App. 3d 1056, 1062 (2008). However, counsel's motion to withdraw must set forth why each of the defendant's *pro se* claims lack merit. *Frey*, 2024 IL 128664, ¶ 27. We review both the scope of an attorney's duties under Rule 651(c) and the attorney's compliance with that rule *de novo*. *Id.* ¶ 21.

¶ 47            Although defendant concedes counsel filed a facially compliant Rule 651(c) certificate averring he consulted with defendant about his contentions of constitutional violations and examined the record, he contends the record rebuts counsel's claims. Defendant does not deny counsel consulted with him about his claims and avoids any reference to consultations he may have had. In his response to counsel's motion to withdraw, defendant says counsel "never once attempted to investigate def.s [*sic*] claims of ineffective assistance of counsel" and improperly relied solely upon the "cold record" to assess his claims. Besides failing to identify with any degree of specificity how counsel was deficient, these arguments are refuted by the record.

¶ 48 Here, counsel filed a Rule 651(c) certificate asserting he consulted with defendant to ascertain his claims and examined the record, which created a presumption that counsel did so. *Id.* ¶ 24. Defendant's argument that the record rebuts this presumption is unpersuasive. Regarding counsel's efforts to consult with defendant, the record shows counsel explicitly told the circuit court at the August 16, 2023, status hearing that he "spoke with [his] client today regarding the issues that he has." Notably, defendant was present at that hearing and did not contest counsel's claim. Later, at the hearing on counsel's motion to withdraw on April 30, 2024, defendant was present in person, and when given the opportunity to speak on the motion or his response, defendant elected to stand on his written response. Defendant neither claimed nor asserted in his response that counsel had not conferred with him about the claims raised in his *pro se* postconviction petition and does not do so on appeal. Accordingly, nothing in the record rebuts the presumption that counsel consulted with defendant. Contrary to defendant's claim, the record *affirms* that counsel did so.

¶ 49 As to postconviction counsel's responsibility to examine the record, defendant claims on appeal that counsel "ignore[d]" plea counsel's failure to file a motion to withdraw defendant's guilty plea despite defendant's request to do so. Defendant asserts counsel's failure to "analyze that factual premise" demonstrates he did not actually review the record, as required under Rule 651(c). The record, however, flatly contradicts defendant's claim counsel failed to address plea counsel's inaction. Postconviction counsel's motion explicitly acknowledged that, although defendant asked his plea counsel to file a motion to withdraw his guilty plea, "counsel failed to do so" and defendant "sufficiently alleged *** [plea] counsel's performance fell below an objective standard of reasonableness." Counsel then assessed whether defendant was prejudiced as a result of his counsel's deficient performance and concluded defendant was not. He found there

was no basis upon which a motion to withdraw defendant's guilty plea could have been granted, even if filed, since the circuit court explained the charge and possible sentence defendant faced and admonished him in substantial compliance with Illinois Supreme Court Rule 402(a) (eff. July 1, 2012). See *People v. Rogers*, 2021 IL 126163, ¶ 32 (counsel cannot be considered ineffective for failing to make or pursue what would have been a meritless motion or objection). Thus, contrary to defendant's claim, the record indicates counsel did analyze the factual basis for defendant's claim and found it unsupported by the record.

¶ 50　　　　In light of the foregoing, we conclude defendant failed to rebut the presumption postconviction counsel complied with Rule 651(c).

¶ 51　　　　　　C. The Issues Raised in Defendant's Postconviction Petition

¶ 52　　　　Finally, defendant raises two arguments touching upon the merits of the claims raised in his postconviction petition. We address these arguments together. First, he asserts the circuit court erroneously granted postconviction counsel's motion to withdraw because the motion failed to explain why every claim in his petition was frivolous or patently without merit. Second, defendant argues, because his claims *were* meritorious, in that they made a substantial showing of a constitutional violation, the court erroneously dismissed his postconviction petition. The State responds that counsel's withdrawal was proper because the motion addressed every claim raised in defendant's petition and dismissal of the petition was appropriate because those claims were meritless.

¶ 53　　　　When appointed postconviction counsel seeks to withdraw, "counsel owes the trial court at least some explanation as to why, despite its superficial virtue, the *pro se* petition is *in fact* frivolous or patently without merit, and counsel owes this explanation with respect to each of [the] defendant's *pro se* claims." (Emphasis in original.) *Kuehner*, 2015 IL 117695, ¶ 21. This

requirement exists whether the *pro se* postconviction petition advanced to the second stage because of judicial inaction or because the claims were found to have potential merit. *Frey*, 2024 IL 128644, ¶ 27. A motion to withdraw at the second stage "does not ask the trial court to conduct its first-stage assessment a second time but rather seeks to bring to the trial court's attention information that was not apparent on the face of the *pro se* petition at the time such assessment was made." *Kuehner*, 2015 IL 117695, ¶ 21.

¶ 54 In turn, if the State determines during second-stage postconviction proceedings the petition lacks merit, the State may file a motion to dismiss. *People v. Pingelton*, 2022 IL 127680, ¶ 33. "In deciding a motion to dismiss, the circuit court must determine whether the petition and accompanying documentation make a substantial showing of a constitutional violation." *Id.* ¶ 34. As we have already noted, we review the second-stage dismissal of a postconviction petition *de novo*, and in assessing the propriety of the dismissal, we liberally construe the allegations in the petition in favor of the petitioner to determine whether they are sufficient to warrant relief under the Act. *Hall*, 217 Ill. 2d at 334; *Gharrett*, 2022 IL App (4th) 210349, ¶ 30.

¶ 55 Here, defendant's petition asserted his plea counsel was ineffective because counsel (1) used "scare tactics" to force him to plead guilty by stating no judge or jury would acquit him if he went to trial and instructed him to answer "yes" to each of the circuit court's questions; (2) led him to believe he would receive a six-year prison term if he pleaded guilty; (3) failed to ensure defendant understood his rights to pursue a trial, cross-examine witnesses, and testify on his behalf; and (4) failed to file a motion to withdraw defendant's guilty plea. He argued counsel's ineffectiveness prejudiced him because, absent counsel's deficient performance, he would not have pleaded guilty but would have pursued a trial at which he could advance a viable defense. As to that defense, defendant claims he could show, based upon Thomas's toxicology report, that he did

not contribute to Beck's death. He further argues, for the first time on appeal, that he was prejudiced by plea counsel's failure to file a motion to withdraw because counsel's failure foreclosed him from pursuing appellate proceedings. See Ill. S. Ct. R. 604(d) (eff. July 1, 2017) (noting no appeal challenging a guilty plea shall be taken from a judgment entered upon such plea unless the defendant files a motion to withdraw the plea and vacate the judgment within 30 days of the imposition of sentence).

¶ 56        Initially, to the extent defendant now asserts his petition raised a meritorious independent due process claim counsel failed to examine, we reject defendant's claim. Although defendant's petition mentioned "Due Process," the substance of the arguments he presented addressed only the ineffectiveness of counsel under the principles announced in *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Beyond that, at no time before the circuit court did defendant advance a due process argument or assert counsel overlooked a due process claim. See *Frey*, 2024 IL 128644, ¶ 31. Rather, counsel's Rule 651(c) certificate asserts he consulted with defendant to ascertain his claims, and nothing in the record rebuts the presumption that counsel did so. Further, when the motion was heard and defendant was given an opportunity to address both the motion and his response, defendant elected to stand on his written response. Accordingly, counsel's purported failure to include a due process claim in the motion to withdraw "strongly suggest[ed]" counsel's consultation revealed defendant did not intend to assert a stand-alone due process claim in his postconviction petition. See *id.* ¶¶ 31, 33 (rejecting the defendant's argument he raised a stand-alone due process claim in his postconviction petition where the petition was, "at best, ambiguous" as to that claim and where the defendant's failure to note his counsel overlooked that issue suggested defendant never intended to raise it).

¶ 57        Further, as we have shown, any claim of a due process violation based on the State's

nonadversarial comment on the state of the law relating to a postconviction counsel's ability to seek withdrawal is baseless.

¶ 58        As to defendant's ineffective-assistance claims, postconviction counsel's motion cited the transcript of the guilty plea hearing to address each of defendant's contentions. See *People v. Fathauer*, 2019 IL App (4th) 180241, ¶ 53 (noting postconviction counsel's motion to withdraw properly drew court's attention to transcript of witness's trial testimony to permit the court to assess the validity of the defendant's petition). Here, counsel points to the circuit court's thorough Rule 402 admonishments fully apprising defendant of the consequences of pleading guilty. The record reflects the court ensured defendant was entering a knowing and voluntary plea. After conferring with defendant and reviewing the record, counsel maintained he could not claim any deficiency by plea counsel sufficient to refute the record and show prejudice. Thus, contrary to defendant's argument, postconviction counsel addressed each claim raised in the postconviction petition when explaining why they were frivolous and patently without merit and supported his conclusions with references to the record. We therefore reject defendant's assertion that counsel's withdrawal was improper for failing to address each claim raised in his petition.

¶ 59        In turn, we agree defendant's claims are meritless in that they do not raise a substantial showing of a constitutional violation.

¶ 60        To establish ineffective assistance of counsel, a defendant must show that his counsel's performance was deficient and that he was prejudiced by that deficient performance. *Strickland*, 466 U.S. at 687. When a defendant raises a claim of ineffective assistance in relation to a guilty plea, the defendant must establish prejudice by showing there is a reasonable probability that, but for counsel's errors, the defendant would not have pleaded guilty but would have pursued a trial. *People v. Brown*, 2017 IL 121681, ¶ 26. To establish the prejudice prong of a claim of

ineffective assistance of counsel relating to a challenge to a guilty plea, the defendant "must show there is a reasonable probability that, absent counsel's errors, the defendant would have pleaded not guilty and insisted on going to trial." *Hall*, 217 Ill. 2d at 335. To show prejudice, any claim by the defendant he would have pursued a trial in lieu of pleading guilty "must be accompanied by either a claim of innocence or the articulation of a plausible defense that could have been raised at trial." *Id.* at 335-36. "[W]hether counsel's deficient representation caused the defendant to plead guilty depends in large part on predicting whether the defendant likely would have been successful at trial." *Id.* at 336. "[A] defendant's failure to satisfy either part of the *Strickland* test will defeat a claim of ineffective assistance." *People v. Edwards*, 195 Ill. 2d 142, 163 (2001).

¶ 61    To ensure a defendant's plea is knowing and voluntary, Illinois Supreme Court Rule 402(a) (eff. July 1, 2012) requires a circuit court to admonish the defendant of his or her rights when pleading guilty and determine if the plea is voluntary. "[W]here the defendant has been meticulously advised of the consequences of his plea and has affirmatively acknowledged that he understands those consequences, he cannot legally complain on appeal merely because he is dissatisfied with the length of his sentence." *People v. Spriggle*, 358 Ill. App. 3d 447, 455 (2005). Thus, a lack of prejudice can be shown when the court's admonishments were sufficient to overcome any prejudice created by the claims of ineffective assistance. See *Hall*, 217 Ill. 2d at 339 (noting previous cases have concluded "the trial court's admonitions were sufficient to ensure the defendants entered voluntary pleas of guilty despite the erroneous advice of counsel"). This is because the purpose of a plea colloquy would be frustrated if a defendant was permitted to state on the record that his plea was voluntary, only to reverse course later and claim that it was not, as this would reduce the colloquy to a meaningless exercise. See *People v. Robinson*, 157 Ill. App. 3d 622, 629 (1987).

¶ 62        "[E]xhaustive admonitions cannot be disregarded as merely a ritualistic formality." *People v. Ramirez*, 162 Ill. 2d 235, 245 (1994). In turn, a "defendant cannot be rewarded for disregarding the specific admonitions of the court." *People v. Radunz*, 180 Ill. App. 3d 734, 742 (1989). For a guilty plea to have any weight, the extensive admonitions by the circuit court and acknowledged by the defendant at a guilty plea hearing "must be held to overwhelm [the defendant's] assertion that he entered his plea involuntarily." *Robinson*, 157 Ill. App. 3d at 629.

¶ 63        All of defendant's claims of ineffective assistance of counsel are meritless because they are refuted by the record. "An example of an indisputably meritless legal theory is one which is completely contradicted by the record." *People v. Hodges*, 234 Ill. 2d 1, 16 (2009).

¶ 64        As to defendant's assertion that plea counsel improperly used "scare tactics" to force him to plead guilty by telling him no judge or jury would acquit him and that he would spend the rest of his life in prison if convicted, the record equally rebuts this claim. At the plea hearing, the circuit court asked defendant if anyone threatened or forced him to plead guilty. Defendant answered, "No, sir." The record does not show defendant equivocated in any way, and he did not assert his plea was induced by any threat or coercion from plea counsel. See *People v. Torres*, 228 Ill. 2d 382, 396-97 (2008) ("It is well settled that a defendant's acknowledgement in open court, at a plea hearing, that there were no agreements or promises regarding his plea serves to contradict a postconviction assertion that he pled guilty in reliance upon an alleged, undisclosed promise by defense counsel regarding sentencing.").

¶ 65        The record contradicts defendant's claim he was forced to plead guilty and presents no basis to believe defendant's guilty plea was involuntary. See *People v. Harris*, 50 Ill. 2d 31, 32-33 (1971) (rejecting the defendant's claim he was coerced into pleading guilty due to threats from plea counsel where the defendant told the court at plea hearing no one threatened, forced, or

induced him to plead guilty).

¶ 66    Similarly, regarding defendant's claim counsel told him to answer "yes" to the circuit court's questions and to plead guilty in order to receive a 6-year sentence, the record is clear the court informed him he faced a possible sentence of 6 to 30 years in prison and asked if he understood his sentencing range. Defendant said he did, and then, upon learning defendant was eligible for an extended term sentence, the court informed him he faced a possible sentence of 30 to 60 years in prison. When the court asked defendant if he understood the sentencing range he faced in light of the prior Class X felony, defendant answered, "Yes, sir." Having apprised the defendant of the new range of sentences due to his exposure to extended-term sentencing, the court then inquired, "Does that change your position on pleading guilty pursuant to this partially negotiated plea?" Defendant responded, "No, sir." Besides denying anyone had threatened or forced him to plead guilty, as noted above, when asked if there had been any other promises made to him to get him to plead guilty, defendant again responded, "No, sir." Additionally, the court told defendant, because it was not bound by the State's agreement as to the recommended sentence, the sentence he could receive "may be different from that contemplated by the plea agreement." Defendant stated he understood. Again, this issue was not raised by defendant in a posttrial motion or brought to the court's attention once he knew he was not getting the six-year sentence. For a defendant who claims to have been told to answer "yes" to every question put to him by the court, he appeared fully capable of responding in the negative when asked directly about threats, force, or promises made.

¶ 67    Defendant did nothing to raise this issue, even after he was aware he was not receiving the sentence he alleges counsel assured him he would get. Remember, this was not defendant's first sentencing hearing on a serious felony, or even his second. The record contains

defendant's extensive criminal history. He was no stranger to courtrooms or criminal proceedings. His juvenile record began at the age of eight and included a significant number of juvenile offenses—from minor violations to fleeing and eluding police, theft of firearms, residential burglary, and armed robbery. He had numerous juvenile probation violations and had been to the Illinois Department of Juvenile Justice on multiple occasions, where he continued to garner what was described as a "plethora" of violations while incarcerated. Eventually aging out, he was then transferred to the adult division of the Illinois Department of Corrections, where he returned several times for adult offenses and violations. As an adult, defendant had "multiple traffic offenses, three misdemeanors, two Class 4 felonies, a Class X felony, and a Class 1 felony incurred prior to this conviction." He committed this offense 13 months after having been discharged from parole. Any reasonably experienced trial judge or criminal defense attorney dealing with a defendant having this much experience recognizes how familiar he is likely to be with the court process.

¶ 68        Yet, when the lawyer defendant now claims told him he would receive 6 years by pleading guilty recommended a sentence "in the range of 12 years," defendant said nothing. When the circuit court readmonished him after learning of the Class X felony and asked him if this changed anything about his desire to plead guilty, defendant said nothing. When counsel asked the court at the conclusion of the plea "whether or not the Court will accept the agreement between the State and the defendant of a cap of 23 years" and the court reminded counsel and defendant "the Court is not bound by the State's agreement to cap the recommendation and can sentence within the minimum and maximum range of penalties," defendant said nothing.

¶ 69        Instead, the record contains thorough Rule 402 admonishments and appropriate responses by defendant to the circuit court's inquiries. The record contains defendant's extensive

criminal history, the facts of the case, and, barring this agreement capping his exposure at 23 years, a possible sentence that could extend to 60 years. Defendant was aware of all of this at the time he accepted the plea. However, he claims counsel made him believe he would receive six years and, but for counsel's "brow beating," he would have never entered a plea of guilty. We must consider the reasonableness of those claims against this record, and we find the record rebutted defendant's claim he was led to believe he would receive a 6-year prison sentence and nothing suggests defendant was unaware he could receive a 21-year sentence. Thus, defendant "cannot now assert that he was pressured or misled into [pleading guilty] merely because he is dissatisfied with the length of the sentence imposed." *Robinson*, 157 Ill. App. 3d at 629.

¶ 70    Defendant then makes a series of vague assertions about the level of counsel's assistance, claiming counsel did not "do enough" to "make sure" or "make certain" defendant understood his rights. Note, he does not claim he was not apprised of those things but merely that plea counsel did not ensure he "possessed an understanding of the law in relation to the facts," including that he had the rights to a trial, to testify, and to cross-examine witnesses about a toxicology report. The record similarly refutes this claim. Tellingly, defendant does not point to anything in the record or describe what counsel failed to do to ensure he understood. How is any court of review to determine whether a defendant understands his rights when he makes such vague claims? By reviewing the circuit court's Rule 402 admonishments. "The purpose of Rule 402 admonishments is to ensure that a defendant understands his plea, the rights he has waived by pleading guilty and the consequences of his action[s]." *People v. Dougherty*, 394 Ill. App. 3d 134, 138 (2009).

¶ 71    The record shows that, prior to accepting defendant's guilty plea, the circuit court explained the charge to defendant. The court also admonished defendant pursuant to Rule 402 that

he had "a right to a trial" and that, by pleading guilty, defendant would waive his right "to a trial *** , the right to confront witnesses against [him], the right to present evidence on [his] own behalf, and the right to testify." When the court asked defendant if he understood these rights, defendant responded, "Yes, sir." As was noted above, defendant does not contend the court's Rule 402 admonishments were in any way deficient, and the record does not indicate defendant equivocated in announcing he understood. Contrary to defendant's claim, the record showed defendant had been advised of and understood his rights at the time he entered his guilty plea, rendering this claim meritless. See *People v. Rogers*, 197 Ill. 2d 216, 222 (2001) (noting dismissal of a postconviction petition is appropriate when the record of the trial proceedings contradicts the defendant's allegations).

¶ 72        Regarding defendant's claim plea counsel was ineffective for failing to file a motion to withdraw his guilty plea raising the foregoing arguments, the record does not show any valid basis for a withdrawal. "[T]o establish prejudice at the second stage of postconviction proceedings, a postconviction petition must not only allege grounds that could have been presented in a motion to withdraw the guilty plea but also show a reasonable probability the motion would be granted on those grounds." *People v. Beasley*, 2017 IL App (4th) 150291, ¶ 30. Absent a valid basis in the record by which to pursue a withdrawal of defendant's guilty plea, defendant could not be prejudiced by plea counsel's failure to file a meritless motion to withdraw.

¶ 73        Even if the foregoing claims were not rebutted by the record, defendant cannot show that he would have been successful at trial. Defendant asserts he had a viable defense in that a toxicology report stated Beck's death was due to the combined effects of heroin, fentanyl, diphenhydramine, and methamphetamine. He argues, given that report, he could show "that the heroin level alone was not fatal, meaning the fatal result was caused entirely by other substances,"

such that a jury could conclude defendant's delivery of heroin "did not contribute to the victim's death at all."

¶ 74       What defendant does not discuss is the substantial amount of evidence against him, which, although not recited in the factual basis, exists in the record by way of the PSI counsel so vociferously argued against. Defendant's sentencing hearing on September 15, 2021, began with counsel arguing his motion seeking to strike the PSI, which was filed two days before. Counsel objected, in relevant part, to the report containing "the entire discovery of the case," which he contended was "not required because there has been a plea and factual basis given." At the hearing, he argued,

> "We are not contending that it's inaccurate. We are not contending that it doesn't fairly demonstrate the history of [defendant]. What we do complain about, Your Honor, is that it is a total recitation of the discovery in this cause, and we don't think that that's proper for a [PSI]."

Counsel contended inclusion of all the evidence against him "is harmful to [defendant] by detailing the entire history of the case." Counsel cited no authority for the argument.

¶ 75       The State pointed to the provisions of section 5-3-2(a) of the Unified Code of Corrections (730 ILCS 5/5-3-2(a) (West 2020)), asserting a PSI shall set forth "any other matters that the investigatory officer deems relevant or the court directs should be included," and argued, "[T]he circumstances of the offense are extremely relevant to this case." The State also accurately noted, absent errors, there was no basis to exclude it. The circuit court found the PSI appropriate, concluding, "The nature and circumstances of the offense are certainly appropriate for the Court to take into consideration." As the court pointed out, had there been a jury trial, the court would have heard most, if not all, of the information anyway. Once the motion was denied, counsel had

no "additions, corrections, or deletions" to the report and supplements. Defendant did not preserve his objection and makes no claim regarding the PSI here.

¶ 76     Included within the 11 pages under the heading "CIRCUMSTANCES OF THE OFFENSE" is a narrative summary of the investigative reports surrounding the death of Beck on May 19, 2019, and investigation of defendant for the offense of drug-induced homicide. Included within the multiple witness statements of persons present either before or after the death of Beck were statements of Plue, who lived with Beck for approximately nine months before his death. She identified defendant as "Dredz," the person who sold heroin to Beck the day before he died. She was present when defendant called Beck in the afternoon of May 18, 2019. She was also present at a second sale later that day. She identified defendant from a photo lineup as the person who sold the heroin to Beck on May 18, 2019, and took police to a residence at 1531 Tremont Street in Lincoln, Illinois, which she knew as defendant's residence. Police were already aware of defendant as "Dredz" from previous police contacts and verified he had given the Tremont Street address as his residence when last arrested. Plue said defendant was the only person Beck purchased heroin from in the 24 hours preceding his death. A later forensic search of Beck's phone revealed no other conversations with anyone else about purchasing drugs in the 24 hours before his death.

¶ 77     Plue told the police she was present for the telephone conversation between Beck and "Dredz" when he called Beck in the early afternoon of May 18 and advised he "[h]ad some shit he was scared to give anyone else." Plue said that "she told John Beck not to be stupid" and not to buy the heroin from him. Plue said Beck first purchased a gram of the heroin from "Dredz" for $100 that day. Later that evening "Dredz" then came to the trailer Beck and Plue lived in and sold Beck another gram for $100. Plue said Beck told her that "the heroin he purchased from 'Dredz' was the strongest heroin [he] had ever had in his life." Beck continued to use the heroin

into the night and was discovered dead the next morning.

¶ 78    In addition to Plue, another witness, Jessica Boatman, told police the 1531 Tremont Street address was her residence, and defendant had moved out of there a couple months earlier. She was aware defendant sold cocaine "to the whole town," in her words, and had seen him selling before. Jesse Oller told police he knew Beck and was aware he was looking for heroin on May 18, 2019. He admitted he and Beck "would trip together often to get heroin." Oller told police Beck knew defendant had connections who could get him heroin. Oller told police defendant "did not use heroin, and did not mess around with heroin usually, and did not know the heroin was strong before giving it to John Beck." From cell phones recovered at Beck's residence, police were able to retrieve "Dredz" as a contact and extracted a Facebook Messenger conversation between defendant and Beck on May 18, 2019, occurring during the times Plue had indicated the phone calls about purchasing heroin had occurred. Further phone extraction revealed other conversations between Beck and defendant regarding the purchase of "brown," a term commonly used to describe heroin. Police retrieved other calls coming to defendant from people seeking "cream" or "ice cream"—terms known by police to mean crystal methamphetamine or "ICE." Defendant appeared to have deleted a number of conversations both before and after Beck's death. When arrested, defendant denied providing the heroin to Beck but admitted he and Beck were friends and had been together playing video games the night before Beck died.

¶ 79    All this evidence was before the circuit court in the PSI the court considered at sentencing. All this evidence was known to defendant when he entered his plea. Defendant's effort to create an inference Beck may have obtained other drugs from someone else the night of his death is refuted by the evidence in the record and would have been of little value as a defense.

¶ 80    A person commits drug-induced homicide by "unlawfully delivering a controlled

substance to another, and any person's death is caused by the injection, inhalation, absorption, or ingestion of any amount of that controlled substance." 720 ILCS 5/9-3.3(a) (West 2018). To prove causation, the State must show the defendant's act was a "contributing cause" of the death. *People v. Nere*, 2018 IL 122566, ¶ 63. Accordingly, the death cannot result from a cause unconnected with the defendant but must have contributed to cause the death. *Id.* ¶ 32. Even so, the defendant's act need not be the sole or immediate cause of the death; it is sufficient the defendant's act contributed to it. *Id.*

¶ 81          Here, the State indicated Plue would testify defendant sold heroin to Beck. The toxicology report, in turn, indicated heroin was one of several substances Beck ingested, resulting in his death. The PSI reveals that, when defendant discussed the sale with Beck, he told Beck he "[h]ad some shit he was scared to give anyone else." Although the report might show that heroin was not the only substance leading to Beck's death, it does not follow that heroin did not *contribute* to it. More importantly, when considering all the evidence in the record, the reason defendant was "scared to give [it] to anyone else" was because he knew the heroin was too strong. Plue had also told police she was aware of three other people who had overdosed on the heroin defendant was selling Beck, including one person in Plue and Beck's kitchen who had to be revived with Narcan. This was why she told him "not to be stupid" and attempted to discourage him from buying from defendant. There was no evidence Beck purchased heroin on May 18, 2019, from anyone other than defendant. Accordingly, introducing the toxicology report and cross-examining Plue with it would not have presented a viable defense to defendant because it would not have disproved defendant's act was a contributing cause of Beck's death, thereby supporting a conviction for drug-induced homicide. As a result, none of the ineffective-assistance allegations raised in his postconviction petition can show the prejudice necessary to be viable claims.

¶ 82        Because defendant fails to show any of his alleged grounds of ineffective assistance of plea counsel would have had merit, he cannot establish he was prejudiced by plea counsel's failure to file a motion to withdraw his plea raising those claims. A defendant does not have a definitive right to withdraw a guilty plea. *Beasley*, 2017 IL App (4th) 150291, ¶ 32. To obtain leave to withdraw a plea, a defendant must show a manifest injustice under the facts involved. *Id.* Although a defendant might enter a guilty plea due to some erroneous advice by counsel, even that fact alone does not destroy the voluntary nature of a guilty plea. *Id.* "Rather, the defendant must establish he was provided ineffective assistance to demonstrate the plea was involuntary." *Id.* "[T]o establish prejudice at the second stage of postconviction proceedings, a postconviction petition must not only allege grounds that could have been presented in a motion to withdraw the guilty plea but also show a reasonable probability the motion would be granted on those grounds." *Id.* ¶ 30. Defendant cannot show his attorney's failure to file a motion to withdraw his guilty plea prejudiced him, as he cannot show there was a reasonable probability of such a motion being granted.

¶ 83        Lastly, defendant claimed in the affidavit attached to his petition he wanted to withdraw his plea, in part, because he claimed actual innocence and therefore would have wanted to proceed to trial. Defendant's claim of actual innocence as a reason for wanting to withdraw his plea has to be viewed in light of the other evidence in the case. "To obtain relief under such a claim, a guilty-plea defendant must provide new, material, noncumulative evidence that clearly and convincingly demonstrates that a trial would probably result in acquittal." *People v. Reed*, 2020 IL 124940, ¶ 57. In hindsight, we can see why counsel claimed the PSI should be stricken as "harmful to [defendant] by detailing the entire history of the case." But for the thorough recitation of the facts found in the report, defendant would have been free to make his baseless claims

uncontested. However, given the evidence in this case, even if a motion to withdraw had been made, we find no basis for the withdrawal of defendant's plea premised upon an actual innocence claim. See *People v. Dumas*, 50 Ill. App. 3d 637, 642 (1977) ("An allegation or assertion of innocence without factual substance is insufficient to require allowing the withdrawal of the plea if defendant is adequately informed of the nature of the charges and the consequences of such plea.").

¶ 84 Finally, we note that to the extent defendant now argues for the first time on appeal plea counsel's failure to file a motion to withdraw his guilty plea prejudiced him because it deprived him of the ability to pursue a direct appeal, that argument also fails.

¶ 85 Citing *Edwards*, 197 Ill. 2d at 251-52, defendant argues a presumption of prejudice applies when an attorney fails to follow a client's instructions to appeal, and he notes a defendant need not prove that the appeal would be successful, only that he would have pursued it but for counsel's deficient conduct. He asserts that, because the record shows he sought to appeal his conviction but was foreclosed by counsel's failure to file a motion to withdraw his guilty plea, he raised a viable claim of ineffective assistance. By record, he means the claims made in his postconviction petition—nothing more.

¶ 86 In *Edwards*, our supreme court concluded the defendant's assertion at the first stage of postconviction proceedings that his plea counsel was ineffective for failing to perfect his appeal by filing a motion to withdraw his guilty plea was not frivolous and patently without merit. *Id.* at 257. In so concluding, the court highlighted that, because plea counsel's alleged deficient performance led not merely to a judicial proceeding of disputed reliability, but to a forfeiture of the proceeding altogether, a presumption of prejudice applied. *Id.* at 251-52. The court further noted that, although the presumption applied, the defendant nevertheless had to show his counsel's

performance actually resulted in the forfeiture of his appeal by demonstrating a reasonable probability that, but for plea counsel's failure to consult with him about an appeal, he would have timely appealed. *Id.* at 252.

¶ 87　　　　*Edwards* is inapplicable for several reasons. First, contrary to defendant's argument, we see nothing in the record to establish he sought to appeal his conviction. To be sure, defendant's postconviction petition indicated he sought to withdraw his guilty plea and stand trial, but he made no claim that the prejudice he suffered due to counsel's failure to file the appropriate motion was related to his inability to file a direct appeal. Rather, defendant simply claimed counsel's inaction prohibited him from *withdrawing his plea*. We see nothing in the record to indicate defendant had even contemplated filing a direct appeal. He only claimed he wanted to withdraw his plea to go to trial. Based on the actual evidence in the record, we know two things: (1) there was no basis to withdraw his plea, even if he sought to do so, and (2) proceeding to trial would have exposed him to extended-term sentencing, consecutive to any sentences he might receive from any of the Logan County cases not otherwise resolved by the plea. Thus, we do not believe defendant has established, absent counsel's failure to file a motion to withdraw his guilty plea, he would have timely appealed. Accordingly, defendant has not shown the prejudice contemplated under *Edwards*.

¶ 88　　　　Second, even assuming defendant had established he would have timely sought an appeal, he overlooks that the court in *Edwards* specifically limited its holding to first-stage postconviction proceedings. *Id.* at 257. Indeed, this court has recognized that *Edwards* applies only to first-stage proceedings and affirmed that prejudice during second-stage proceedings requires a showing that, not only does a postconviction petition allege grounds that could have been presented in a motion to withdraw the defendant's guilty plea, but also that there is a reasonable probability

the motion would have been granted on those grounds. *Beasley*, 2017 IL App (4th) 150291, ¶¶ 28, 30. As we have explained above, defendant cannot meet that standard here, as none of his claims are meritorious.

¶ 89        Based on the foregoing, we determine postconviction counsel sufficiently explained why each claim in defendant's *pro se* postconviction petition was in fact frivolous or patently without merit. Thus, because the record establishes postconviction counsel provided reasonable assistance by satisfying his obligation to address all of defendant's *pro se* claims, we conclude the circuit court did not err in granting counsel's motion to withdraw. See *Fathauer*, 2019 IL App (4th) 180241, ¶¶ 5, 64 (rejecting the defendant's argument the circuit court erred by granting postconviction counsel's motion to withdraw where counsel's motion brought to the court's attention information not apparent on the face of the *pro se* petition and explained why each claim in the petition was in fact frivolous or patently without merit). In turn, because the claims in defendant's petition were meritless, he failed to make a substantial showing of a constitutional deprivation, and the circuit court did not err in dismissing the petition.

¶ 90                                III. CONCLUSION

¶ 91        For the reasons stated, we affirm the circuit court's judgment.

¶ 92        Affirmed.

*People v. Rogers*, 2026 IL App (4th) 250262

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Logan County, No. 19-CF-130; the Hon. Jonathan C. Wright, Judge, presiding. |
| **Attorneys for Appellant:** | James E. Chadd, Catherine K. Hart, and Janieen R. Tarrance, of State Appellate Defender's Office, of Springfield, for appellant. |
| **Attorneys for Appellee:** | Bradley M. Hauge, State's Attorney, of Lincoln (Patrick Delfino, David J. Robinson, and Connor Goetten, of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People. |